THE NATHAN HALE.

THE GERTRUDE.

ABELL *v.* THE NATHAN HALE AND THE GERTRUDE.

*(District Court, S. D. New York. December 17, 1891.)*

PERSONAL INJURIES TO EMPLOYE—DIVIDING TOW UNDER WAY—NEGLIGENCE—MUTUAL FAULT.

It is imprudent and hazardous to divide a tow under way in a tide-way and in a high wind, to be picked up by other boats; and this being done without necessity, off the Battery, and a hand having his foot cut off by a coil of rope which rendered while making fast to the drifting tow, *held* negligence in the tug for which it was answerable. But the court being of the opinion that the hand's attention was to some extent given to the naval parade at the Ericsson funeral, and that the hand was partly in fault, allowed him $700 only.

In Admiralty. Edward S. Abell sued the tugs Nathan Hale and Gertrude to recover for personal injuries.

*Hyland & Zabriskie,* for libelant.

*Samuel Park,* for claimants.

BROWN, J. In the afternoon of August 23, 1891, the libelant, who was captain of the barge Susquehanna, then in tow along-side of the steam-tug Gertrude, had his foot cut off at the ankle by getting caught in a coil of the rope which was rendering, while he was making fast two other barges on his port side. The three barges were bound for the North river. They had come down the East river with six or seven other barges bound for Amboy, in tow of the Nathan Hale and the Gertrude. At about 3 o'clock in the afternoon, when they arrived off the Battery, or a little beyond, the Gertrude was assigned to detach the three barges, while the rest of the tow went to Amboy. The Gertrude accordingly first took on her port side the libelant's barge Susquehanna before

she was dropped from the tow, and then she ordered the other two barges, which were in the tier next astern, to cast off from the main tow, which was under way. The weight of evidence is clearly to the effect that the tug and the Susquehanna did not proceed to take up the other two barges until they had dropped 200 or 300 feet astern of the main tow. There was a strong north-west wind, and the tide was ebb. When the two barges were some 25 or 30 feet from the Susquehanna, and nearly abreast of her, the captain of the latter was ordered by the master of the Gertrude to throw them a line to make fast. It is the customary duty of the captain of the barges to obey the orders of the tug-masters in heaving lines or in making fast their own or other boats in the necessary changes, when the boats of the tow have different destinations. The two barges were light, and they were drifting backwards at the time when the order was given. A line was thrown to them, and by a loop at once made fast on the nearest barge. The captain of the Susquehanna then put the line through his stem chock; and got one turn about the bitt, which was about eight feet from the chock; and while attempting to make a second turn, as he testified, the line rendered as the barges were drifting astern, and his foot got caught in the coil, which drew his foot up against the bitt, and severed the foot at the ankle. I find more than usual embarrassment upon the facts of the case, not only from the contradiction between the witnesses in regard to facts which it should seem ought to be equally well known to each, but from the different versions of the accident by the libelant himself, whose original libel agrees with some of the defendants' witnesses in the important particular, if true, that the accident occurred while the line was allowed to render for the purpose of letting the barges drop astern after they had been previously made fast to the Susquehanna. The amended libel, however, asserts that the accident occurred in the first attempt to secure the two barges to the Susquehanna, and several of the defendants' witnesses sustain this account. The probabilities of the case afford little aid, because the whole conduct of the tug in relation to the two barges seems upon any theory to have been unreasonable and naturally improbable. Upon the whole, I think the weight of the testimony sustains the statements of the amended libel in this particular, and that the accident took place when the line was first thrown to the two barges, and they were 200 or 300 feet astern of the main tow. The weight of evidence is further clearly to the effect that the method pursued in this case, namely, by casting off the two barges from the main tow in the ebb-tide and in a high north-west wind, before any lines had been made fast to them, as might have been done, was an unusual, improper, and dangerous mode of handling the boats; and that it imposed unnecessary risks and actual danger upon the men employed in the attempt to stop or "snub" the two barges while they were drifting astern of the Susquehanna in the high wind. The testimony of the captain of the Gertrude, in effect, confirms this; for he insists that he did make fast the lines to the two barges before he ordered them cast adrift, though some parts of his testimony and the weight of evidence are to the contrary. The necessarily

hurried execution of orders under such circumstances, and the difficulty of the work, tend naturally to such accidents as this. The tug is answerable for the unnecessary and unjustifiable method adopted by her captain in handling the boats, and she must therefore be held liable as contributing to the accident. *The Frank and Willie,* 45 Fed. Rep. 494. There is strong evidence, however, that the libelant was not giving his undivided attention to the lines, but was in part looking at the parade of the numerous vessels in the bay at that time in attendance upon the funeral of Ericsson. The libelant emphatically denies this. But as he has no one to confirm his own testimony on this point, and the story of the opposing witnesses is so natural under such circumstances, I do not feel warranted in awarding the libelant full damages on his own testimony alone, when thus contradicted, upon the theory that he was wholly free from fault. The libelant is not, however, for that reason, wholly cut off from relief in a court of admiralty. The accident was severe; he is a cripple for life; and, though the evidence does not justify a full decree, yet, upon the principles approved in the case of *The Max Morris,* 137 U. S. 1, 11 Sup. Ct. Rep. 29, 24 Fed. Rep. 860, I allow him the sum of $700; for which a decree may be entered, with costs.